

**DEPARTMENT OF HEALTH & HUMAN SERVICES**  Public Health Service

National Institutes of Health
Bethesda, Maryland 20892
Building : 36
Room    : 2A29
(301) 496-5091

Milton W. Brightman, Ph. D.
Section Chief
Brain Structural Plasticity
Laboratory of Neurobiology, NIH

April 2, 1991

Dear Dr. Brightman:

    On several occasions I have complained to you regarding discriminatory acts of Miss Lissa Chang, the technician in the lab. But it is clear over and over again that you support her unscrupulous acts against me. <u>Now, miss Chang has decided to abandon her immunocytochemical proceedures related to the project on which I am working, simply because I am part of the project. This is what you have told me.</u> This is <u>ONE</u> of the examples of discrimination with which I have been faced for the past 18 months. There have been other occasions of which you are aware.

    What is most disheartening, in this connection, you have threatened to kick me out of the lab because I constantly tell you of Miss Chang's behavior. Currently, you are threatening me to leave the lab again. There seems to be a stronger bond between you and Miss Chang that outweighs the call for principles and fair actions within the work place. Since the threats for dismissal are not based on academic or intellectual performances related to my project in your laboratory, I would have these happenings properly investigated to ensure proper and unbiased decision by all authorities concerned.

    That I take this action validates the fact that discriminatory acts against me have now become unbearable.

                                Sincerely,

                                Pylord P. Doe, M.D.
                                Visiting Fellow

cc:   Thomas Reese, M.D.
       Chief, Lab of Neurobiology

       Mr. Vernon Mabry
       Acting Chief, Complaints Branch
       Division of Equal Opportunity



| DEPARTMENT OF HEALTH & HUMAN SERVICES | Public Health Service |
|---|---|

National Institutes of Health
Bethesda, Maryland 20892
Building  : 10
Room      : 6N214
(301) 496- 2395

Fax 301 496 8244

March 4, 1992

Miss Helen Balling
Neural Transplantation Unit, LMCM, NINDS

Dear Miss Balling:

    I have taken very seriously your accusations against me that I have verbally threatened you by saying to you "I warn you" while we were discussiing matters relating to the use of a timer in the laboratory. At first, I considered these matters trivial; but now they must be considered otherwise. You claim that you have the feeling that I consider you unimportant because I am a Doctor of Medicine; but you have pointed out no objective reasons why you make this and other claims against me. This points out or suggests that you have a "complex" in your unconscious mind about Doctors (and most probably about young, black, male Doctors). Even my attempts to allay your fears and convince you as to the contrary of your concocted beliefs and prejudices, in the presence of Dr. John Commissiang, you claimed that I was even being insulting; this is a strange behavior and I cannot understand it.

    Miss Balling, you are clearly aware that these accusations portend a serious threat to my current position and my overall performance at this Institute. In my view, I consider them unfounded, calculating, and vi cious; they are a malicious assassination of my character with the clear intent to defame and destroy my professional career. I take this opportunity to say that if these unfounded and unwarranted accusations do not desist, I am determined to invite judicial measures at which time I shall vindicate myself in the Court of Law. Kindly consider this a serious matter and is not being taken lightly in any form or manner.

                                              Sincerely yours,

                                              Pylord P. Doe, M.D.
                                              Visiting Fellow, NTU, LMCM, NINDS

cc: Dr. John Commissing
    Chief, Neural Transplantation Unit, LMCM, NINDS



DEPARTMENT OF HEALTH & HUMAN SERVICES

Public Health Service
National Institutes of Health

# Memorandum

**Date**     March 21, 1991

**From**     M. W. Brightman, Ph.D., Section Chief, LN, NINDS.

**Subject**  Termination of Dr. Pylord Doe's Fogarty, Post-Doctoral Fellowship.

**To**       Mr. Albert Salas and Ms Christine Steyer

Dr. Doe began his tenure as a Visiting Fellow in the NIH Fogarty Visiting program on October 1, 1989 and was notified by me on June 28, 1990, that his appointment was to be extended until September 30, 1992. However, his behavior during the past year has made his continued stay in this laboratory untenable. He has persisted in loud outbursts of temper and in repeated verbal abuse of my laboratory assistant, Ms. Lisa Chang. He has also been absent on days when he was expected to be present. I have documented the incidents that have led to this action.

### Behavior

The prime reason for requesting Dr. Doe to leave the laboratory is his repeatedly abusive, disruptive behavior, particularly toward Ms Lisa Chang.

Shortly after his joining the Section, I asked Ms Chang to help Dr. Doe to aliquot chemicals. She explained her use of a dilution formula but he became somewhat irritated, presumably because he did not follow her explanation and possibly because of her dogmatic manner which has annoyed all of us on occasion. When Ms Chang noticed that he rested the pipette so that the once sterile tip projected outside of the laminar flow hood, she pointed out this breach of sterility to him. He shouted that he did not understand what she was saying since Dr. David Simpson, experienced in such techniques, had instructed him otherwise. I entered the room at this point and Ms Chang warned him not to raise his voice. He continued to shout in the corridor. Ms Chang and I were shocked at this unwarranted, explosive behavior. Doe left and I asked Chang to finish what he had begun.

About 2 - 3 months later, Chang was talking to me in my office, when she was suddenly interrupted by Doe who told her to take a phone message for another member of the laboratory. Chang later asked Doe why he had expected her to take the call, since we all took phone messages for each other. He began to shout and continued doing so in the corridor, then left.

EXHIBIT  9

PAGE  1  OF  3  PAGES

In July of 1990, a highly competent summer student, Vu Truong, told Doe that, like every user of our light microscope, he shoud re-order film if he were the one to use the last roll. Doe replied that it was not his job to order film. Truong insisted that if Doe took the last roll, he should be the one to order it. This demand elicited such a violent explosion of abusive and foul language, that Dr. Simpson feared for the student's safety and was about to call the campus guard office for help. I had warned Doe that any further incidents such as the ones outlined would necessitate my asking him to leave the Section. These and similar incidents have indicated to me that Doe is very defensive of his status as a Neurologist and will brook neither direction nor criticism from junior members of the Section. At the outset of his appointment, I had warned him that he would be given many bluntly worded instructions as had I, but that I accepted them as necessary for learning new techniques. His reply was the reassuring one that he had joined the laboratory to learn and did not stand on ceremony. His behavior has been precisely the opposite of this claim. He has repeatedly taken inappropriately sharp offence at suggestions and criticisms.

On March 18, 1991 the latest and most vituperative outburst took place. Chang and Doe began chatting and he told her that he was going to a new laboratory, a decision of which I was unaware. She thought that this confidence was a sign of trust and civility since she had been doing histochemistry for his project over the recent months. She replied, with good intentions, that it would be a good idea for him to review stoichiometry. Further conversation about other matters left her with the feeling that she had once again antagonized him. She apologized for suggesting that he review methods of calculations but that she had been trying to be helpful, that she had meant well and that she, herself, constantly needed to review such methods.

On the following day, a very minor incident involving our new Stay-in-School assistant and Dr. Sanovich of our Section made me wonder whether Ms Chang might have aggravated the situation but Chang assured me that she was in another room and had merely been asked for her opinion. Upon hearing that I had thought Chang might have been responsible for the disagreement, Doe suddenly began shouting at Chang, pointing his finger at her and calling her names, using epithets. Chang was much shaken and angered by this violent outburst and accused Doe of hallucinating. He later told me that this meant that she thought that he was taking drugs, an implication that added fuel to his outrage. Chang was tearful as she called me at my home a few minutes after the outburst. She then told me that she would no longer do any work for Doe and I agreed with her decision.

9
2   3

RECEIVED

Page II:

<u>Absences at critical times.</u>
  Dr. Doe came to the laboratory, completely untrained in the very basics of laboratory work. I had to show him how to make a 70% alcohol solution. Because we were developing techniques together, I told him that he had to be in the laboratory when I was present, i.e., during the day. However, he would be absent at unpredictable times, although he would come to the laboratory in the evenings and week ends during my absence. When I asked him why he could not manage to be in the laboratory when I was present, he replied "I have my private life".

  I told him in November, 1990 that we would receive a visit from Dr. William Shane who was doing similar work and it would be a good opportunity for discussion, but that I would not be informed of the date of his visit until shortly before his arrival. When the visitor arrived, I sought Dr. Doe but he was absent until late afternoon, long after the visitor had left. On March 13, 1991, our future collaborator, Dr. James Russell gave a seminar before our laboratory. As usual, the notice of the seminar had been posted for several days. Dr. Doe did not attend. The reasons he gave me were that he did not know that Dr. Russell had been working on the same structure that were were, even though some time before, Doe attended a seminar given by Dr. Russell on a cell type similar to the one we were jointly to investigate. The second reason was that Dr. Russell had been putting us off repeatedly and was probably not interested in collaboration.

On about March 20, I notified Ms Christine Steyer that I thought that Doe was so disruptive that he had to leave, that I had had repeated discussions with him concerning his vituperative behavior and that I was willing to give him until December 30, 1991 to depart.

On April 1, Doe told me that he was unhappy in my laboratory and I told him that for his sake and the equanimity of the Section that he leave by that date. He calmly agreed to do so and even suggested that he might depart at an earlier time. The meeting was so free of acrimony that I thought no further action would be required, until I received the enclosed note to-day, April 2.
Your suggestions on a course of action would be appreciated.

      Sincerely,


      Milton Brightman, Ph.D.

EXHIBIT C-9
PAGE 3 OF 3 PAGES